Kent B. **CRANE**, Appellant,

v.

**NEW YORK ZOOLOGICAL SOCIETY.**

No. 88–7167.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 26, 1989.

Decided Jan. 30, 1990.

---

Stephen J. Gray, with whom Pascale De-Boeck, Washington, D.C., was on the brief, for appellant. Stephen S. Boynton, Washington, D.C., also entered an appearance, for appellant.

Joseph S. Crociata, Washington, D.C., for appellee.

Before WALD, Chief Judge, and BUCKLEY and SENTELLE, Circuit Judges.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Kent B. Crane, a resident of the District of Columbia, appeals from an order dismissing his defamation complaint against the New York Zoological Society for lack of personal jurisdiction. The district court held that because Crane failed to show that the defamatory material complained of was published in the District, he could not, as a matter of law, have suffered injury within the District. The court therefore concluded that jurisdiction over the New York Zoological Society was not available under the D.C. "long-arm" jurisdiction statute. Because we find that the court erred on the question of law and that Crane has made the necessary *prima facie* showing of injury within the District, we reverse and remand for consideration of the remaining jurisdictional issues.

## I. BACKGROUND

### A. Jurisdictional Requirements

Kent B. Crane lives and conducts his game ranching and wildlife breeding consulting business within the District of Columbia ("District"). The New York Zoological Society ("Society") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business located at the Bronx Zoo in New York City. The Society does not transact business within the District.

■ As subject matter jurisdiction in this case is based on diversity of citizenship, we look to District law to determine whether there is a basis for exercising personal jurisdiction over the Society. *Crane v. Carr*, 814 F.2d 758, 762 (D.C.Cir.1987). The District's long-arm statute provides, in relevant part:

(a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by agent, as to a claim for relief arising from the person's—

. . . .

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C.Code § 13–423(a) (1989). A defendant is therefore subject to the District's long-arm statute if he causes injury here by an act committed elsewhere and, in addition, has "some other reasonable connection" with the District, such as engaging in a "persistent course of conduct" within the District. *Founding Church of Scientology v. Verlag*, 536 F.2d 429, 432 (D.C.Cir. 1976).

■ That connection must be such that the exercise of jurisdiction will comport not only with the statute's requirements, but with those of the due process clause as well. *Id.* The constitutional test is met if the defendant's "minimum contacts" with the District are such that subjecting it to

suit would "not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940)). The plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant. *Reuber v. United States*, 750 F.2d 1039, 1052 (D.C.Cir.1984). In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff. *Id.*

### B. The Alleged Libel

Prior to December 1984, Crane submitted a proposal to the Government of Belize for the establishment of a wild animal ranch and breeding center in that country. On December 14, 1984, Archie Carr III, then Assistant Director of the Society, wrote a letter to the President of the Belize Audubon Society (with copies sent to three or four other persons) containing critical comments concerning Crane and his proposal ("letter"). The letter questioned Crane's motives and professional abilities and said that he sounded like "the kind of wildeyed, arrogant, rich yo yo" that Carr had always feared "might threaten ... the land and the people of Belize." Seven months later, Crane received a letter from the Belize Minister of Natural Resources informing him that his proposal had been rejected in part because of the "extremely prejudicial remarks" about him contained in Carr's letter to the President of the Belize Audubon Society. Letter of Hon. Dean R. Lindo to Kent Crane dated July 10, 1985, Complaint, Exhibit B.

### C. Procedural Background

On December 12, 1985, Crane filed this action against the Society and four individual defendants, alleging that he had been libeled and placed in a "false light." His complaint asserted that Carr's letter had resulted in injury to his professional and personal reputation and had caused him economic loss and emotional anguish. Complaint, paras. 14–17. Shortly after Crane filed his complaint and before any discovery, the defendants moved pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for dismissal for lack of personal jurisdiction. The district court granted the motion on the grounds that Carr had failed to establish the "persistent course of conduct" and the "minimum contacts" required by the statute and due process. The court did not reach the allegations of injury. *Crane v. Carr*, Civ. No. 85–3938 (D.D.C. Apr. 30, 1986). On appeal, we affirmed the dismissal of the action against the individual defendants, *Crane*, 814 F.2d at 760, but remanded the case against the Society so that Crane might have the opportunity to obtain discovery of jurisdictional facts concerning the Society's contacts with the District. *Id.* at 764.

On remand and after limited discovery, the Society again moved to dismiss Crane's complaint for lack of personal jurisdiction. The district court granted the motion but did not reach the questions on which this court had remanded the case, namely, whether the Society engaged in a "persistent course of conduct" in the District and whether assertion of jurisdiction would comport with due process. *Crane v. New York Zoological Society*, Civ. No. 85–3938, mem. order at 9, 1988 WL 64926 (D.D.C. June 10, 1988) ("Memorandum Order"). Rather, the district court concluded, as a matter of fact, that the letter was ot published in the District by anyone other than Crane, finding Crane's assertions to the contrary in his affidavit and deposition testimony to be "unsupported," "conclusory," and without "foundation" or "credibility." *Id.* at 8. Accordingly, the court held that Crane had failed to sustain his burden to make a *prima facie* showing that he suffered injury in the District, and that the Society was therefore not subject to jurisdiction under the District's long-arm statute. *Id.* at 7 & n. 7. Crane appeals this decision.

## II. DISCUSSION

### A. Injury Under the Long–Arm Statute

Based on its finding that the letter was not published in the District by anyone

other than Crane, the court held that "[e]ven assuming ... that [Crane] had established injury in the form of economic loss and harm to his reputation, we find that our exercise of jurisdiction would not be appropriate absent evidence of publication in the District." *Id.* (footnote omitted). The court reasoned that "[a]n injury by libel occurs *at the site of publication*," relying on *Howser v. Pearson,* 95 F.Supp. 936, 938 (D.D.C.1951), and that Crane therefore could not have suffered injury in the District unless the libel was published there. Memorandum Order at 7 (emphasis in original). Crane contends that this conclusion is wrong as a matter of law.

■ In *Howser,* the court was faced with a choice-of-law question. The court stated that the determination of which state's law should apply was governed by "the place where the wrong was committed," and that "[l]ibel and slander take place where the defamatory statement is communicated and not in the place from which the offending material is sent or where it originates." *Howser,* 95 F.Supp. at 938. Thus, libel occurs in the place where published, but the injuries that may flow from libel are not necessarily restricted to the place of publication.

■■ The core interest protected by libel law is a person's reputation, i.e., the general estimation in which that person is held by the public. 2 F. Harper, F. James & O. Gray, *The Law of Torts* § 5.1, at 24 (1986); *see Hearst Corp. v. Hughes,* 297 Md. 112, 127, 466 A.2d 486, 493 (1983); W. Keeton, D. Dobbs, R. Keeton & D. Owen, *Prosser & Keeton on Torts* § 111, at 773 (5th ed. 1984). Derogatory remarks plainly cannot damage a person's reputation unless those remarks are "published," i.e., communicated to some third person: there can be no defamation without publication. F. Harper, F. James & O. Gray, *supra* § 5.15; W. Keeton, D. Dobbs, R. Keeton & D. Owen, *supra* § 113, at 797–802; *see Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 648, 261 A.2d 731, 734–35 (1970).

The law of defamation also allows recovery for injuries other than to one's reputation. *Hearst Corp.,* 297 Md. at 122, 466 A.2d at 491. A plaintiff, for example, may recover for pecuniary loss resulting from the defamation. *Robertson v. McCloskey,* 680 F.Supp. 414, 415 (D.D.C.1988); F. Harper, F. James & O. Gray, *supra* § 5.30, at 257 & n. 21; R. Smolla, *Law of Defamation* § 1.06[2] (1986) (Defamation may produce "tangible pecuniary injury, such as lost employment or diminished business. In such instances the law of defamation performs a compensation function indistinguishable from that of any other tort."). A plaintiff may also recover for mental suffering resulting from damage to his reputation. *Afro–American Publishing Co. v. Jaffe,* 366 F.2d 649, 660 (D.C.Cir.1966) (en banc); B. Sanford, *Libel and Privacy* § 9.6.3, at 367 & n. 85 (1985). Mental suffering, rather than damage to reputation, is also the predicate of Crane's "false light" claim. *See Dresbach v. Doubleday & Co.,* 518 F.Supp. 1285, 1293 (D.D.C.1981).

■ Crane alleged each of these injuries. Nevertheless, because the district court had concluded that publication "in the District is a prerequisite for the existence of injury here," Memorandum Order at 6, and because it found that Crane had failed, in his affidavit and other submissions, to provide any evidence of such publication, the court held that Crane had failed to show any *prima facie* injury in the District. *Id.* at 6–7.

We can find no support for the court's proposition. As we noted when this case first came before us, "the claims in suit, libel and 'false light,' are the kind in which the injury, foreseeably, is felt with the greatest force in the place where the plaintiff lives." *Crane,* 814 F.2d at 760. Quite clearly, economic loss resulting from defamation is most likely to be felt in one's place of business whatever the locus of its publication; and mental suffering is self-evidently experienced where the mind is located. It may also be true that injury to reputation can occur even when publication occurs outside the jurisdiction in which the plaintiff lives or works: given the rapid flow of information and people in our society across state and national borders, a defamation published in one place might well

affect the general estimation in which that plaintiff is held in another place, without a second publication occurring there.

We need not decide this last point, however, because contrary to the district court, we find that Crane has established a *prima facie* case at least with respect to the occurrence of economic injury within the District. In his affidavit in support of his opposition to the original defendants' motion to dismiss, Crane asserted that he conducts his business in the District of Columbia and that as a direct and proximate result of the letter, his business has suffered. Affidavit of Kent B. Crane dated Mar. 31, 1986, paras. 1 and 4. This assertion is corroborated by the letter from the Belize Minister of Natural Resources to Crane advising him that the Ministry was "most concerned to find that the Belize Audubon Society [had] withdrawn its support for your proposal and that Dr. Carr of the NYZS [had] written extremely prejudicial remarks about you personally"; and that "[i]n view of these circumstances, we regret that we cannot approve your concepts as they now stand." Complaint, Exhibit B. Accordingly, we find that Crane has made the requisite *prima facie* showing of injury within the District.

### B. Remaining Jurisdictional Issues

Because the district court held that jurisdiction was predicated on publication within the District, it failed to determine whether the Society's non-governmental contacts were sufficient to satisfy the "persistent course of conduct" requirement of D.C. Code § 13–423(a)(4) or the "minimum contacts" required to satisfy due process. Memorandum Order at 9. Crane nevertheless urges us to hold, on the basis of the evidence in the record, that the Society's connections with the District are sufficient to meet these requirements. Because it is "the general rule ... that a federal appellate court does not consider an issue not passed upon below," *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976), we decline to do so.

### III. CONCLUSION

For the foregoing reasons, we reverse the district court's finding that Crane had failed to establish a *prima facie* case of injury within the District of Columbia, vacate its order dismissing Crane's complaint, and direct the court to determine whether the Society's contacts with the District constitute a persistent course of conduct within the meaning of D.C.Code § 13–423(a)(4) and whether they meet the constitutional minimum required for the exercise of jurisdiction over the Society.

*So ordered.*